# Baisch *versus* Oakeley.

1. Oakeley, who owned two-thirds and Richards one-third of a tract of land, conveyed all his interest to Richards; the next day, by agreement in writing, Richards bound himself to reconvey one-half when $4500 due by Oakeley to him should be repaid.  *Held*, that it was not error to submit to the jury with other evidence in parol, whether the two instruments were a mortgage.

2. A mere spark of evidence should not carry a case to the jury.

3. The evidence must be sufficient to found a reasonable probability not a mere possibility, especially to contradict a writing.

4. Evidence in this case not sufficient to go to the jury as to whether the papers were a mortgage of the two-thirds. ·

March 6th and 7th 1871.   Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ.   WILLIAMS, J., at Nisi Prius.

Error to the Court of Common Pleas of *Berks county:* No. 322, to January Term 1871.

.On the 6th of April 1867, George W. Oakeley brought an action of ejectment against John Baisch for a tract of 10 acres and 97 perches of ore land.

Both parties traced their title from Philip Zeiber, who being the owner of the tract in question, on the 21st of September 1844 conveyed an undivided third to George W. Oakeley the plain-

[Baisch v. Oakeley.]

tiff and another undivided third to Matthias J. Richards a brother-in-law of Oakeley.   On the 14th of February 1845, Zeiber conveyed the remaining undivided third to H. H. Muhlenberg, who on the 1st of October 1845, conveyed this third to Oakeley:— Oakeley thus becoming the owner of two-thirds, and Richards of one third.   On the 20th of July 1849, Oakeley, in consideration of one dollar " in addition to other good and valuable causes and considerations had and received from the said Matthias S. Richards at and before," &c., conveyed to Richards in fee all his interest in the tract and also in a number of leases, amongst which were one from Weimer and another from Davis.

On the 21st of July 1849, Oakeley and Richards entered into the following agreement:

" Whereas George W. Oakeley and wife, by their certain instrument or instruments of writing bearing date the twentieth of July instant, and recorded in the office for recording of deeds, &c., in and for the county of Berks, for the consideration therein mentioned, granted and conveyed in fee simple unto Matthias S. Richards of Reading (already owner of part) all the right, title and interest of the residue part of and in the vineyard property on Penn Mount, in Alsace township, Berks county, containing ten acres and ninety-seven perches, be the same more or less; also several leases for mining of iron ore, as in and by the said conveyances, on reference thereunto had more fully at large will appear. And whereas the said Matthias S. Richards, being now sole owner of the property, &c., aforesaid, notwithstanding which it is the intention of him the said M. S. Richards, that the one equal undivided half part thereof may become beneficial to him the said George W. Oakeley and family, if he shall prudently manage the same.   And a reconveyance of the said undivided half part of the ten acres and ninety-seven perches, premises and leases aforesaid will be made whenever he the said George W. Oakeley shall repay the said M. S. Richards his heirs or assigns, four thousand five hundred dollars, and in the mean time shall have paid .the interest on said sum annually from the date hereof.   Or in case of his premature death, in such case the survivors of his family shall be equally entitled to a redemption of the equal undivided half part of the property and leases, if so desired by them within a reasonable time thereafter, on the terms and conditions aforesaid.

" For the present, and until otherwise ordered; it is agreed by and between the parties that George W. Oakeley be the actuary and work the mines to the best advantage, paying the said Matthias S. Richards, his heirs or assigns, twenty-five cents rent for each and every ton iron ore mined, raised and sold, free from any other charges; and have in care the vineyard and culture of the grapes, and after deducting all reasonable costs and expenses at-

[Baisch *v.* Oakeley.]

tending said vineyard and culture from the products thereof, divide the profits arising therefrom and pay to the said M. S. Richards or order, one half part thereof for his share.

"And it is also further agreed upon, that the said George W. Oakeley will well and truly keep an account of the trust aforesaid, and from time to time exhibit the same, and pay over to the said Matthias S. Richards, his heirs or assigns, such rents and dividends, whenever reasonably thereunto required.

" "And it is also understood and agreed upon by and between the said parties, that the present ore mined, estimated at four hundred tons, is reserved for George W. Oakeley, at his disposal without accountability to Matthias S. Richards; and that the said George W. Oakeley is entitled to the two third parts of the vineyard crop in the present season; in all other respects this present agreement is so to be construed as in force and effect from the date hereof."

Richards devised the estate to William A. Richards, and he by his will, dated the 6th of April 1865, devised it to John Baisch, the defendant, "subject however to the agreement entered into by and between my late father, Matthias S. Richards, and my uncle, George W. Oakeley."

Oakeley claimed that his conveyance of July 20th 1849 to Richards was a mortgage of two-thirds of the tract for a debt due by him to Richards, and that the indebtedness for which the conveyance had been made had been repaid from sales of ore and ore-rents from the land.

On the trial before Woodward, P. J., the titles as above stated having been given in evidence by the parties respectively; the plaintiff in rebuttal gave in evidence the two ore leases from Weimer and Davis to himself before the conveyance, at different royalties, and a lease dated January 1st 1851, from Oakeley & Richards to Robert S. Buck for the unexpired time of those two leases and also of the premises in question, under which Buck was to mine 3000 tons of ore per annum, paying seventy cents per ton; also a statement from the books of the lessees (now Reeves, Buck & Co.) to August 14th 1869, showing a balance of $21,948.42, in addition to which were ore and tools belonging to Oakeley, but received by Richards, amounting to $1094.68, making the whole amount $23,043.10.

Washington Richards testified that he had frequently heard Judge M. S. Richards say he was managing the property for Dr. Oakeley and when the debt was paid it was to be his property again.

Plaintiff gave in evidence mortgage, notes and bonds held against him by Judge Richards, dated from February 19th to July 26th 1849, and amounting in the whole to $2252.40.

He called Eliza S. McElroy, a sister of Judge Richards, who testi-

[Baisch *v.* Oakeley.]

fied that a paper shown her, was a copy of a paper in the writing of her brother, she had compared the copy with the paper after William Richards's death, it was found in the ledger in a box; it was copied and put back into the box. " The paper was about ore; twenty-five cents till the debt was paid; it was signed M. S. Richards, G. W. Oakeley; did not know whether the paper had a date or not; was not quite certain whether Richards's name was to it or not."

The paper was as follows:—

"As to the Weimer and Davis lease, Mr. Oakeley proposes to give William twenty-five cents, to be considered as paying off the principal of the $4500 in course of fourteen years—get nothing further but the principal in dribs. Oakeley agrees to pay the interest on the $4500 yearly.

" True copy of M. S. Richards's handwriting.

" Witness—ELIZA S. MCELROY."

The plaintiff offered the paper in evidence; it was objected to by the defendant as being without date or signature and would only mislead the jury if admitted. It was admitted by the court and a bill of exceptions sealed.

The defendant then gave in evidence settlements between Oakeley and Judge Richards; and it was agreed, that in all there were fifteen settlements between them, commencing 6th January 1853, and ending 11th July 1859; that in these settlements M. S. Richards retained annually the sum of $270 for interest from 1850 to 1858; that he retained one-half the net proceeds of the leases.

Other evidence was offered on both sides, not necessary to be referred to, except evidence by the plaintiff that besides his indebtedness to Judge Richards he was deeply in debt between June 1849 and April 1851 to other persons.

The court stated the case to the jury as presented by the evidence and charged:—

* * * "These are the papers executed by the parties, and [under them, in view of the other evidence in the cause, the legal rights of these parties are to be settled by the jury]. It is claimed on behalf of the plaintiff, that the sum of $4500, the repayment of which was provided for by the agreement of the 21st of July 1849, formed the sole consideration for the conveyance of the preceding day; that the absolute character of the deed was qualified by the agreement, which is alleged to be a defeasance, and that the papers, taken together, amounted to a mortgage. And upon this view of the legal rights of the parties the court are asked for binding instructions that the plaintiff is entitled to a verdict for the whole of his claim, upon the jury finding that the $4500 provided for in the agreement have been fully paid. The fact of this payment is asserted on the part of the plaintiff to be

[Baisch *v.* Oakeley.]

found in the receipt by Judge Richards of ore-rents from Reeves, Buck & Co., over and above the amount he was entitled to receive as the equitable owner of one-third of the property. The manner of this suggested form of payment the jury will readily understand. The evidence shows that fifteen different settlements were made between Judge Richards and Dr. Oakeley, between the 1st of January 1853 and the 11th of June 1859. The moneys due from Reeves, Buck & Co. were paid to Judge Richards, who charged the general account in the first instance with taxes and expenses, and then retained, each year, the sum of $270 for interest, withholding at each settlement one-half of the net balance and paying to Dr. Oakeley the remaining half. The plaintiff's theory is, that equitably Judge Richards was entitled to withhold but one-third of the rents after the deduction of expenses, and that his receipt of the excess, in connection with the $270 retained annually for interest, the whole of the $4500 was paid. If the court were warranted in giving the legal instructions asked for by the plaintiff's counsel, it would only remain for them to submit the question of the fact of this payment to the jury, and there would probably be little difficulty in reaching a result, as it would depend upon a calculation of amounts which are ascertained in the evidence.

"The court, however, are not able to give the instructions asked for. It has been held as a rule of law that no form of words can deprive a mortgagor of his right to redeem his land. * * * In view of the principles of law relied upon, the plaintiff's counsel insisting that the papers in question show that the deed from Oakeley to Richards was in consideration of a pre-existing debt, and that the agreement for a reconveyance on the repayment of that debt was contemporaneous with the deed, insist upon a disposition of the whole case by instructions from the court to the jury that the transaction amounted to a mortgage. On the other hand a ruling in favor of the defendant is contended for because, on the face of the papers, it is shown that the deed and agreement were not of contemporaneous date, and because, in the view of his counsel, the agreement was for a conditional sale by its very terms. If the facts of the case were such as to justify the application of the rule of law for which the plaintiff's counsel contend, the right of the plaintiff to recover, the repayment of the debt being proved, would perhaps be the necessary result of such an application. But [the court are not at liberty, under this evidence, to assume the disposition of the cause. They are bound to submit to the jury, under the papers and other evidence, the question as to what the real nature of the transaction between Judge Richards and Dr. Oakeley was].

"There is no proof of a character so distinct as to justify the court in adopting it, as to what was the real consideration of the

[Baisch v. Oakeley.]

conveyance of the 20th of July 1849. It does not appear affirmatively that the $4500 mentioned in the agreement formed the sole consideration for the deed. [It is for the jury to connect this deed with the agreement of the following day, if they are to be connected. If, under the evidence, the jury find that the $4500 stipulated in the agreement to be repaid, formed the whole debt of Dr. Oakeley to Judge Richards, and included all the liabilities for the doctor which the judge assumed; that the deed was made in view of, and in order to secure the payment of that indebtedness; and that the agreement was made for a reconveyance upon such repayment, then the principles of law which have been read to you are to be applied, and the whole contract, taken together, is to be treated as a mortgage of such interest in the property as Dr. Oakeley owned. In that case, notwithstanding the stipulation for the reconveyance of one-half of the property, the plaintiff would be entitled to a verdict for two-thirds], because the law would treat the contract of the parties as a mortgage, and would limit his rights to a recovery of his debt and interest. There would then remain the simple question as to whether the debt of $4500, with its interest, had been fully paid.

"The jury will thus understand that it is their duty to pass upon this whole cause. And they will perform this duty in the light given them by all the evidence that has been submitted. The testimony of Washington Richards is submitted for consideration, with the memorandum sworn to by Mrs. McElroy. In regard to this memorandum, it does not, in the opinion of the court, help or hinder the case upon either side, but it is before the jury in its connection with the other proofs on which they will have to pass. They are to consider all the facts in disposing of the main question presented to them—the family relations, as well as the business relations which existed between Judge Richards and Dr. Oakeley,—the pecuniary position of the doctor at the time, the sort of partnership in the mines which the parties formed, the transactions connected with the mines before the execution of the deed of the 20th of July 1849, and the dealings, arrangements and settlements between them after the execution of the deed and agreement, which the jury shall find to have been proved.

"[If the jury find it proved that the sum mentioned in the agreement was the only consideration for the deed, and that the real contract of the parties was to secure the repayment of that sum, and shall find it proved also that the sum has been repaid, the verdict should be in favor of the plaintiff for his entire interest in the land, as that interest was held previous to the execution of the deed.]

"[If, on the other hand, it shall be found that there were other considerations of an extent and kind that made it just and equitable that Judge Richards should retain the one-half of the net

18 P. F. Smith—7

[Baisch *v.* Oakeley.]

rents of the property, and just and equitable also that he should retain one-half of the property itself, then, although the jury should find the $4500 to have been paid, the right of the plaintiff would be limited to a verdict for one-half of the land.] * * *

"In any event, a verdict is to be rendered in favor of the plaintiff. If the sum of $4500 provided for in the agreement has been fully paid, and the jury find, under the instructions given them, that the contract of the parties was to secure its payment as a stipulated debt, the verdict should be for two-thirds of the land in controversy. If they find that the money has been paid, and still find that there were other motives and considerations than the $4500 for the execution of the conveyance, and that, in reality, the transaction was intended to be a contract of sale for a valuable consideration, and not a mortgage, a verdict for one-half only of the land can be rendered. If the jury find that, in whole or in part, the money has not been paid, the jury are to ascertain the sum actually due on this account from Dr. Oakeley, and render a verdict for the plaintiff for two-thirds, or for one-half of the land, as they shall find the actual original contract to require, subject to the payment within a stipulated time, of the balance which shall remain unpaid." * * *

The verdict was for the plaintiff for two-thirds of the land.

The defendant removed the record to the Supreme Court, and there assigned the following errors :—

2, 3, 4, 5 and 6. The parts of the charge enclosed in brackets.

9. In not instructing the jury that the deed and agreement constituted a conditional sale and not a mortgage, and that Dr. Oakley was entitled to recover one-half of the premises upon paying the amount found to be due under the evidence, viz.: $4500 with interest from July 1859.

*A. G. Green* (with whom was *J. L. Richards*), for plaintiff in error.—Parol evidence cannot be given to contradict the written agreement of the parties executed in connection with the deed of conveyance, when such agreement shows that the transaction is a conditional sale and not defeasance : Brown *v.* Nickle, 6 Barr 390 ; Kunkle *v.* Wolfersberger, 6 Watts 126 ; Rhines *v.* Baird, 5 Wright 256. There was nothing for the jury to find ; the court should have given binding instructions to the jury to that effect : Todd *v.* Campbell, 8 Casey 250. Where the contract and conveyance were clearly for an absolute sale, and the agreement to reconvey a subsequent and distinct matter, there may be a conditional sale : Spering's Appeal, 10 P. F. Smith 199. The covenant to reconvey being at a different time, there could be no decree to reconvey : Barrell *v.* Sabine, 1 Vernon 268. Richards could not have collected his $4500 by any legal process, and this is a test of a mortgage : Stoever *v.* Stoever, 9 S. & R. 454.

[Baisch v. Oakeley.]

*G. F. Baer*, for defendant in error.—Parol evidence is admissible to show an absolute deed a mortgage, whilst a mortgage may not be shown to be a deed: Colwell *v.* Woods, 3 Watts 188; Kerr *v.* Gilmore, 6 Id. 405; Hiester *v.* Madeira, 3 W. & S. 384; Director of the Poor *v.* Royer, 7 Wright 146; Jaques *v.* Weeks, 7 Watts 261. If the agreement is in substance a loan of money, no management nor contrivance of the lender, no form of expression in the instrument (Kerr *v.* Gilmore, 6 Watts 407), will avail, and an equity is at once raised which is superior to the technical rules and principles of the common law: 4 Kent's Com. 143; Story's Eq. Jur., § 1014; Douglass *v.* Culverwell, 3 Giff. 251. There was a pre-existing debt and an advance of money; the debt survived, Oakley continued in possession until thrust out by Baisch as devisee of W. A. Richards; the consideration was grossly inadequate; Oakley's embarrassment and distress are conceded. It follows that this whole transaction was a mortgage: Wharf *v.* Howell, 5 Binn. 503; Johnston *v.* Gray, 16 S. & R. 365; Colwell *v.* Woods, 3 Watts 188; Kunkle *v.* Wolfersberger, 6 Id. 126; Kerr *v.* Gilmore, Id. 405; Rankin *v.* Mortimere, 7 Id. 372; Jaques *v.* Weeks, Id. 271; Hiester *v.* Madeira, 3 W. & S. 388; Brown *v.* Nickle, 6 Barr 390; Reitenbaugh *v.* Ludwick, 7 Casey 131; Wilson *v.* Shoenberger, Id. 295; Todd *v.* Campbell, 8 Id. 250; Kellum *v.* Smith, 9 Id. 158; Rhines *v.* Baird, 5 Wright 263; Ins. Co. *v.* Austin, 6 Id. 266; Directors *v.* Royer, 7 Id. 146; Guthrie *v.* Kahle, 10 Id. 331; Spering's Appeal, 10 P. F. Smith 210; Taylor *v.* Cornelius, Id. 187; Harper's Appeal, 14 Id. 315; Fonb. Eq., Book III., ch. 1, § 4; Johnston *v.* Gray, 16 S. & R. 365; Holridge *v.* Gillespie, 2 Johns. Chan. 30.

The opinion of the court was delivered, May 8th 1871, by

AGNEW, J.—The 1st assignment of error, besides having no merit, is not made according to the rule of the court. It is therefore dismissed without further notice.

The 2d, 3d, 4th, 5th, 6th and 9th errors bring up a single question, to wit: the effect of the agreement of July 21st 1849. We discover no error in the court's submitting to the jury this agreement as evidence, with the other facts in the case, that the deeds of July 20th 1849, were but a mortgage of the estates conveyed by these deeds to Matthew S. Richards, of the one-half of the property set forth in the agreement. But we think there was no sufficient evidence to submit to them, that the deeds were only a mortgage of two-thirds of the property. It has been frequently said of late by this court, that the doctrine of a scintilla of evidence is not law, and that a mere spark of evidence ought not to carry a case to the jury. The evidence must be sufficient to found upon it a reasonable probability of the existence of the fact asserted, and not a mere possibility; and especially when its pur-

[Baisch *v.* Oakeley.]

pose is to contradict a solemn writing of the parties stating the fact otherwise. In this case the agreement of July 21st 1849 sets forth, clearly and without qualification or doubt, that the estate to be reconveyed by M. S. Richards to George W. Oakeley was the undivided half part of the 10 acres and 97 perches conveyed by the deeds of July 20th 1849, upon repayment of the sum of $4500 and interest; and that Oakeley, as the actuary and agent of Richards of the mines, vineyards, &c., should pay to Richards, after deducting reasonable costs and expenses, one-half of `the profits for his share. This proportion is corroborated by the conduct of the parties for many years while both lived, in the payment of the interest and the division of the profits. Now there is absolutely nothing in the testimony of Washington Richards, and the memorandum testified to by Mrs. McElroy, to contradict this proportion (the one-half), or to prove that the true proportion was two-thirds to be reconveyed. We are not at liberty to infer from the statement of Judge Richards to Washington Richards; that he was managing the property of Dr. Oakeley, and when the debt was paid, it was to be his property again; that he meant a different proportion from that stated in the written contract. The fact that the deeds conveyed two-thirds of the property to Judge Richards is not alone a sufficient reason to overturn the express terms of the agreement of July 21st 1849. Oakeley was then deeply in debt to Richards and also to others, and unable to pay his creditors. The reasonable interpretation of the entire transaction, is, that the deeds were made to equalize the ownership of the parties, as well as to secure repayment advanced or to be advanced; and therefore that the deeds were absolute as to the one-sixth, thus making Richards's ownership one-half, and were a security for the repayment of the $4500, upon the one-half left in Oakeley. When parties have thus put their bargain in writing and have acted in accordance with it for so many years, it is error to permit a different interest to be found by a jury on such dubious and uncertain evidence as the statement of Washington Richards. It is undoubtedly true that Judge Richards was managing the property for the benefit of Oakeley, his brother-in-law, together with himself. He never denied this, and the memorandum referred to by Mrs. McElroy, proves no more. But how much of the property or what proportion did he mean? He gave it no name, and signified nothing contrary to his contract. It is now, after his death, a graceless act in the plaintiffs to ask a jury to infer a mere possibility of two-thirds against the positive agreement of both parties that the security for the money should rest upon one-half only; and against their own interpretation of it for years. For this error the judgment must be reversed. The 7th and 8th assignments are not according to rule and will not be noticed.

Judgment reversed, and a *venire facias de novo* awarded.